UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KARL PETRICH,

  Plaintiff,

               Case No. 08-cv-13527

v.

               Honorable Patrick J. Duggan

CITY OF FLINT,

  Defendant.
             /

**OPINION AND ORDER**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on December 29, 2010.

PRESENT:  THE HONORABLE PATRICK J. DUGGAN
        U.S. DISTRICT COURT JUDGE

Karl Petrich ("Plaintiff") filed this action against the City of Flint ("Defendant"), alleging that Defendant violated his freedom of speech under the First Amendment to the United States Constitution. Presently before the Court is Defendant's Motion for Summary Judgment, filed pursuant to Federal Rule of Civil Procedure 56. The matter has been fully briefed, and the Court heard oral arguments on November 30, 2010. For the reasons stated below, the Court denies Defendant's Motion.

**I. Factual and Procedural Background**

At all times relevant, Plaintiff was employed as a police officer by Defendant. Compl. ¶ 4. Plaintiff was also the President of the Flint branch of the African American

Police League ("AAPL"), an organization which includes several of Defendant's police officers as members. *Id.* ¶ 5.

In June 2008, Donald Williamson, the Mayor of Flint, appointed David Dicks to the position of acting police chief. Pl.'s Br. 2. The appointment was controversial because Dicks, a former Flint police officer, lacked supervisory experience and had been terminated from the police force after pleading guilty to a charge of impaired driving. *Id.* Dicks was also under investigation by the FBI at the time. *Id.* Williamson also appointed Dicks' father, Richard Dicks, to the position of "super chief."

On June 3, 2008, the *Flint Journal*, a local newspaper, published an article entitled "Father-son duo to oversee police," discussing the new appointments. Pl.'s Br. 1. The article claimed that the appointments angered local police, noting David Dicks' conviction and the ongoing FBI investigation. Pl.'s Br. Ex. D at 2. The article identified Plaintiff as "the head of the department's Afro-American Police League," attributing the following statement to him: "This is a slap in the face to the citizens of the city of Flint . . . As a 19-year veteran of the Flint Police Department, I have never seen things so screwed up in my entire career." *Id.*

On June 9, 2008, Dicks distributed a Memorandum with the subject "Release of Information," stating:

> No member of the department shall speak to or release any information regarding the department and/or its employees to the news media. This is in accordance with the Flint Police Department's Rules and Regulations #5/002.2-1 - Responsibility for the Release of Information.

Pl.'s Br. Ex. I. Prior Flint Police Department policy allowed officers to speak to the

media, but required them to clarify that such statements reflected their own opinions, rather than the opinion or policy of the Flint Police Department. Pl.'s Br. 3.

Also on June 9, 2008, David Dicks allegedly instructed Internal Affairs Officer Beth Whaley to open an investigation into a statement Plaintiff made to the press and issue a two-day suspension. On June 12, 2008, Plaintiff was issued a notice of suspension for two days based on violations of Defendant's media policy, beginning June 14, 2008. Def.'s Br. Supp. Mot. Ex. C at 1. Sergeant Rodney Williams conducted the investigation, and issued an Investigative Report Synopsis on June 13, 2008, stating that Plaintiff made the relevant comment in his role as president of the AAPL. Pl.'s Br. Ex. C at 2. Williams found Plaintiff "exonerated for his actions," and recommended no discipline. *Id.* Plaintiff filed a grievance challenging his suspension, resulting in the suspension being rescinded. Def.'s Br. Supp. Mot. 1.

Plaintiff filed this action on August 14, 2008, asserting that Defendant's policy was unconstitutional and that its actions violated his First Amendment free speech rights. Plaintiff sought damages and an order declaring Defendant's policy unconstitutional.

On September 8, 2008, Dicks issued a Memorandum rescinding the June 9, 2008 Memorandum. Pl.'s Br. Ex. F at 67-69. Plaintiff claims that after his suspension, he curtailed his interaction with the media, fearing further retaliation. Pl.'s Br. 5.

On August 10, 2010, Defendant filed a Motion for Summary Judgment, arguing that Plaintiff's action should be dismissed because (1) his speech was not constitutionally protected, and (2) his alleged injury was not caused by a municipal custom or policy.

**II. Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. at 2553.

Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.*, 106 S. Ct. at 2514.

### III. Governing Law

"While public employees may not be required to sacrifice their First Amendment free speech rights in order to obtain or continue their employment, a state is afforded greater leeway to control speech that threatens to undermine the state's ability to perform its legitimate functions." *Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003). Courts apply a three-step inquiry to public employees' First Amendment retaliation claims.

First, the Court must determine whether the speech addressed a matter of public concern. *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 143, 103 S. Ct. 1684, 1688 (1983)). This is a question of law for the Court to resolve, although there may be some factual questions for a jury if it is disputed whether the expression occurred or what words were specifically stated. *Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2008). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147-48, 103 S. Ct. at 1690. A public employee speaking pursuant to his official responsibilities is not speaking as a citizen, and his speech is therefore not constitutionally protected. *Garcetti v. Ceballos*, 547 U.S. 410, 421, 126 S. Ct. 1951, 1960 (2006).

If the speech addressed a matter of public concern, the Court must "balance the interests of the public employee, 'as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Rodgers*, 344 F.3d at 596 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35 (1968)). The application of the *Pickering* balancing test is a matter of law for the Court to decide.

*Hughes*, 542 F.3d at 181.

"Finally, the court must determine whether the employee's speech was a substantial or motivating factor in the employer's decision to take the adverse employment action against the employee." *Id*. "[T]he employee must 'point to specific, nonconclusory allegations reasonably linking her speech to employer discipline.'" *Rodgers*, 344 F.3d at 602 (quoting *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 602 (6th Cir. 2002)).

## IV. Application

### A. Matter of Public Concern

As long as some portion of the employee's speech addresses a matter of public concern, it is protected. *Farhat v. Jopke*, 370 F.3d 580, 589 (6th Cir. 2004). "Speech is of 'public concern' if it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *Id.* at 590. "When an institution oversees some aspect of public safety, the correct operation of that institution is a matter of public concern." *Hoover v. Radabaugh*, 307 F.3d 460, 466 (6th Cir. 2002). A matter is of public concern where it is the subject of legitimate news interest, and of value and concern to the general public at the time of publication. *City of San Diego v. Roe*, 543 U.S. 77, 83-84, 125 S. Ct. 521, 525-26 (2004). Matters of purely personal interest to employees, such as personal vendettas, do not enjoy First Amendment protection. *McMurphy v. City of Flushing*, 802 F.2d 191, 197-98 (6th Cir. 1986).

The Court concludes that Plaintiff's statements involve a matter of public concern. David Dicks' recent conviction for impaired driving and the FBI investigation raised

questions about his ability to competently lead the Flint Police Department. Public safety concerns require a well-run police force, and Plaintiff expressed his view that this expectation would not be met under David Dicks' leadership. Nothing in Plaintiff's comment indicates a purely personal vendetta against Dicks; rather, it conveys Plaintiff's frustration with what he believed was an unwarranted appointment. Considering the content, form, and context of Plaintiff's statement, the Court concludes that it involved a matter of public concern.

Defendant cites *McMurphy v. City of Flushing*, but this decision provides little support for its argument. In that case, the plaintiff accused city officials of unspecified cover-ups and misconduct, used "strong and vulgar language," and even attempted to incite a physical altercation with the city manager. *McMurphy*, 802 F.2d at 193. The court found that the plaintiff's remarks and actions indicated a personal vendetta. Plaintiff's comments here certainly paint a negative picture of Defendant's decisions, but fail to demonstrate the same sort of personal animosity.

Defendant points to *Brown v. City of Trenton*, but this comparison is inappropriate. In *Brown*, the plaintiff police officers wrote a letter to the police chief, stating that they were "fed up with . . . the internal strife from within our own department," and citing a number of factors contributing to that strife. 867 F.2d 318, 319 (6th Cir. 1989). These included jealousy, internal politics, and allegations that the city's Emergency Response Tactical Team had become a scapegoat for the financial and union problems. *Id.* at 319-20. As the letter admittedly focused on "internal strife," it could only be construed as focusing on issues of personal interest to city employees. Plaintiff's comment focuses on

7

the competency and quality of the Flint Police Department's leadership, an issue that could certainly be expected to influence public safety.

**B. Statements Made Pursuant to an Employee's Official Duties**

In *Garcetti v. Ceballos*, the Supreme Court was faced with the question of whether a public employee could be disciplined for statements made in his official capacity. 547 U.S. at 414-15, 126 S. Ct. at 1955-56. The Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421, 126 S. Ct. at 1960. The Court noted that this result comported with the policies underlying First Amendment jurisprudence:

> Employers have heightened interests in controlling speech made by an employee in his or her professional capacity. Official communications have official consequences, creating a need for substantive consistency and clarity. Supervisors must ensure that their employees' official communications are accurate, demonstrate sound judgment, and promote the employer's mission.

*Id.* at 422-23, 126 S. Ct. at 1960. The Court noted that there was no dispute as to whether the employee made his statements pursuant to his official duties. *Id.* at 424-25, 126 S. Ct. at 1961. The Court therefore did not "articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate." *Id. Garcetti* merely cautioned that when addressing such scenarios, "[t]he proper inquiry is a practical one." *Id.*

Courts applying this "practical" inquiry after *Garcetti* have faced the more difficult question of whether the First Amendment protects statements by public employees acting

in dual roles. The Seventh Circuit addressed this issue in *Fuerst v. Clarke*, 454 F.3d 770 (7th Cir. 2006). In *Fuerst*, the plaintiff deputy sheriff was also president of the union of Milwaukee County deputy sheriffs. *Id.* at 771. He criticized the sheriff's decision to replace a deputy with a civilian in a civil service position. *Id.* at 772. After this criticism was reported in Milwaukee's leading newspaper, the plaintiff was passed over for a promotion, allegedly because he was not "loyal" to the sheriff's "vision." *Id.* The court found *Garcetti* inapplicable because of the plaintiff's dual roles:

> Because Fuerst's comments that precipitated the adverse action taken against him were made in his capacity as a union representative, rather than in the course of his employment as a deputy sheriff - his duties as deputy sheriff did not include commenting on the sheriff's decision to hire a public-relations officer - the Supreme Court's recent decision in *Garcetti v. Ceballos* is inapposite.

*Id.* at 774 (citation omitted). The court concluded that when the employee was "wearing his union president's hat, he is not challenging the sheriff's authority but carrying out duties consistent with that authority." *Id.* at 775.

The Sixth Circuit recently addressed this scenario in an unpublished opinion, *Miller v. City of Canton*, 319 Fed. Appx. 411 (6th Cir. 2009). In that case, the plaintiff police officer also served as president of the local police officers' union, the Canton Police Patrolman's Association. *Id.* at 412-13. The plaintiff and the union issued a press release alleging that the police chief discriminated against black officers, citing various department practices in support of their claim. *Id.* at 413. The plaintiff was suspended for sixty days for preparing and issuing this press release. *Id.* He filed suit, alleging that the city retaliated against him for participation in a protected activity. The district court

9

granted summary judgment for the employer, and the plaintiff appealed. On review, the Sixth Circuit panel briefly addressed the application of *Garcetti* to the case, concluding that the plaintiff "was not doing what he was 'employed to do' when he issued the press release . . . [r]ather, the press release fell outside [Plaintiff's] official duties as a police officer." *Id.* at 417 (citations omitted). Drawing this distinction between a union official's duties to his employer and his duties to the union, the panel reversed the district court's grant of summary judgment as to the plaintiff's First Amendment claim. *Id.* at 419.

Neither *Miller* nor *Fuerst* is binding precedent, but the reasoning of these decisions is persuasive. The City has no interest in controlling the speech of the AAPL. Thus, where Plaintiff spoke to the media in his capacity as president of the AAPL, rather than as a police officer, *Garcetti* does not bar his First Amendment claims. Plaintiff has established that his comments were made in his capacity as president of the AAPL. The *Journal* article in which Plaintiff was quoted specifically identified him as "head of the department's Afro-American Police League." Pl.'s Br. Ex. D at 1. Defendant's Investigative Report Synopsis also states that Plaintiff claims his comments were made in his capacity as an AAPL officer rather than as an employee of the Flint Police Department. *Garcetti* does not bar Plaintiff's First Amendment claims.

Defendant argues that *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir. 2007), bars Plaintiff's First Amendment claim. In that case, the plaintiff police officer drove to the scene of an accident and made statements to the media. *Id.* at 496. The court found that these statements were not protected by the First Amendment, as the plaintiff made them while on duty and working at the scene of an accident. *Id.* at 498. Unlike the instant

10

case, there was no indication that the plaintiff spoke in a capacity other than that of a police officer. Plaintiff indisputably made his comments to the media in his capacity as AAPL president rather than as a police officer, undermining any comparison to *Nixon*.

**C. *Pickering* Balancing**

If a public employee's speech addressed a matter of public concern, the Court must "balance the interests of the public employee, 'as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Rodgers*, 344 F.3d at 596 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35 (1968)). In weighing these interests, the Court should consider whether an employee's comments meaningfully interfere with the performance of his duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Rodgers*, 344 F.3d at 601. "Relevant factors in this regard include 'the manner, time, and place of the employee's expression,' as well as 'the context in which the dispute arose.'" *Id.* (quoting *Rankin v. McPherson*, 483 U.S. 378, 388, 107 S. Ct. 2891, 2899 (1987)). Defendant bears the burden of demonstrating that legitimate grounds existed for the adverse action. *Id.*

Considering these factors, the Court concludes that the *Pickering* balancing weighs in Plaintiff's favor. Defendant has presented no evidence indicating that Plaintiff's comments interfered with the performance of his duties. Defendant has also failed to demonstrate that Plaintiff's speech resulted in disharmony among his coworkers. There is

11

no evidence that Plaintiff's speech undermined the Flint Police Department's legitimate goals. The Court concludes that the AAPL's interest in being able to express its views regarding the operation of the Flint Police Department is greater than Defendant's general interest in maintaining police discipline.

Defendant cites case law holding that a city's interest in maintaining a disciplined police force outweighs officers' free speech interests, pointing to *Brown v. City of Trenton* in support of its position. This reliance is misplaced, as the *Brown* court concluded that the plaintiffs' speech did not involve a matter of public concern, making the balancing of interests unnecessary. *Brown*, 867 F.2d at 322. Defendant also cites *Graham v. City of Mentor*, an unpublished Sixth Circuit decision, but the case is distinguishable. In *Graham*, three plaintiff police officers used the media to repeatedly voice their disapproval of the police chief. 118 Fed. Appx. 27, 28 (6th Cir. 2004). They allegedly conducted interviews with the press, harassed a local bar owner to support the police union, and forced a security guard to send a letter critical of the police chief to the newspaper. *Id.* at 29. The district court granted the employer summary judgment, and the Sixth Circuit affirmed, holding that "a police chief cannot be expected to 'tolerate action which he reasonably believed would disrupt the office, undermine his authority, and destroy close working relationships.'" *Id.* at 30 (quoting *Connick*, 461 U.S. at 154, 103 S. Ct. at 1694). The court found that the plaintiffs "clearly intended to create division among the officers," noting that "[a] police chief needs authority over and loyalty from his subordinates." *Id.* at 30-31. There is no indication, however, that Defendant exercises authority over Plaintiff when he speaks as president of the AAPL. Plaintiff's statements as head of the AAPL do

not undermine the authority of the police chief.  Although the AAPL's views may conflict with Defendant's, this does not constitute insubordination.  Defendant notes that the officers in *Graham* were "active in the police union," but there is no indication that they were authorized to speak or act on the organization's behalf.  This difference cannot be ignored, as it is undisputed that Plaintiff was authorized to speak on behalf of the AAPL.

**D. Official Policy or Custom**

Defendant argues that Plaintiff's alleged injury was not caused by a municipal custom or policy, noting that municipalities cannot be held liable under a theory of *respondeat superior* for the torts of their employees.  Municipal liability attaches when the action that inflicts the injury represents official policy.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978).  Where an individual seeks to hold a municipality liable for a constitutional violation, "[a] court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'"  *McMillian v. Monroe County*, 520 U.S. 781, 784-85, 117 S. Ct. 1734, 1736 (1997).  "Officials can derive their authority to make final policy from customs or legislative enactments, or such authority can be delegated to them by other officials who have final policymaking authority."  *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993).  The Court must identify the officials who have the power to make policy on a particular issue; the inquiry is not an "all or nothing" matter.  *Id.* at 785, 117 S. Ct. at 1737.

Plaintiff argues that Defendant's policy unconstitutionally prohibited police officers

from speaking about matters of public concern. Compl. ¶ 12. He further asserts that Defendant violated his First Amendment rights by disciplining him after he spoke to the media about matters of public concern. *Id.* ¶ 14. Plaintiff has set forth evidence showing that these actions originated from officials with final policymaking authority. Dicks issued the new media policy in a Memorandum dated June 9, 2008. Pl.'s Br. Ex. I. Plaintiff presented testimony stating that Mayor Donald Williamson directed Dicks to issue this policy, and that this was Defendant's accepted practice. Pl.'s Br. Ex. K at 46-47. With respect to disciplinary decisions, Dicks testified that he followed Williamson's orders. Pl.'s Br. Ex. F at 112. Drawing all justifiable inferences in Plaintiff's favor, the Court concludes that Plaintiff has established a genuine dispute of material fact regarding whether officials with final policymaking authority took the actions in question.

## V. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

Kelly A. Kruse, Esq.
John A. Postulka, Esq.
Peter M. Bade, Esq.